# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MATTHEW R. MORA,

    Plaintiff,

v.                                                                Civ. No. 14-265 JB/GBW

SERGEANT C. OWENS and
SERGEANT C. GRIEGO,

    Defendants.

## REPORT AND RECOMMENDATIONS

This matter is before the Court on Defendants' Motion for Summary Judgment (*doc. 33*). Being fully advised, I recommend that the Court grant summary judgment in favor of the Defendants.

## I. BACKGROUND

Plaintiff's Amended Complaint asserts that he was subject to the following alleged constitutional violations arising under the Eighth Amendment: (1) Claim 1 -- sexual harassment; and (2) Claim 2 -- deprivation of the minimal civilized measure of life's necessities.[1] *See doc. 14*. Plaintiff seeks relief under 42 U.S.C. § 1983 against the named officers in their individual capacities. *See id.* Defendants have moved for summary judgment on the basis of qualified immunity and other grounds. *See doc. 33*. Because Plaintiff has not overcome the qualified immunity defense by establishing any

---

[1] The Court has previously dismissed Plaintiff's third claim alleging retaliation. *See doc. 23*.

constitutional violation committed by Defendants, I recommend granting Defendants' motion.

II.  **UNDISPUTED FACTS**

Upon order of the Court, Defendants filed a report pursuant *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) on July 10, 2017.  *See docs. 29, 32*.  Despite being provided an opportunity to do so (*see doc. 31*), Plaintiff has filed no conflicting evidence to controvert the facts set out in the report.  In their motion for summary judgment, filed concurrently with the *Martinez* report, Defendants identify with particularity the facts from the report on which they rely.  *See doc. 33*.  Despite being provided an opportunity to do so, Plaintiff has filed no response to the motion.  Consequently, he has not identified any facts proffered by Defendants which he disputes, let alone pointed to the record to support the dispute.  *See* FED. R. CIV. P. 56; *see also* D.N.M.LR-Civ. 56.1.

Under these circumstances, Plaintiff has waived the right to respond or to controvert the facts asserted in the summary judgment motion.  *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).  Thus, I will "accept as true all material facts asserted and properly supported in the summary judgment motion." *Id*.

1.  Plaintiff is a former detainee at the Bernalillo County Metropolitan

Detention Center (MDC) who was detained there from April 7, 2013 until being released on bail on April 11, 2015. UMF 1.[2]

2. On February 28, 2014, Plaintiff was being readied for transfer to Polk County, Texas along with other MDC detainees. UMF 2.

3. At that time, some MDC detainees were being sent to other detention facilities that contracted with Bernalillo County to house detainees, including a prison facility in Polk County, Texas (hereinafter "Polk County"). UMF 3.

4. Prior to being transported to Polk County on February 28, 2014, Plaintiff informed certain MDC officers, including Defendants, that he was going to hurt himself and Plaintiff subsequently missed the transport to Polk County. UMF 4.

5. After Plaintiff reported he was going to hurt himself, he was taken to the Sheltered Housing Unit (SHU), where "appropriate services to meet the serious medical health care needs of inmates" are provided at MDC. UMF 5.

6. Per MDC policy, "[a]ll inmates requiring Level I suicide watch will be placed on an HSU or SHU until released or advanced to level II or III status." UMF 6.

---

[2] Citations to "UMF" refer to the corresponding Undisputed Material Fact laid out in Defendants' Motion for Summary Judgment. *Doc. 33* at 3-12. Unless otherwise noted, such citations incorporate the record citations relied upon by Defendants.

7. MDC policy provides that a detainee will remain on suicide watch Level I "until a physician or licensed clinical psychologist determines that the crisis has been resolved or that the inmate can be placed in a less restrictive crisis care status." UMF 7.

8. Psychiatric Services Unit (PSU) of Correctional Healthcare Companies (CHC) is a company which contracts with Bernalillo County to provide medical/psychiatric services to MDC detainees. UMF 8.

9. PSU interviewed Plaintiff and determined that he lied about wanting to hurt himself in order to avoid being transferred to Polk County. UMF 9.

10. A Level I suicide watch detainee is defined within MDC policy as "an inmate with an immediate intent to harm themselves, as expressed verbally (by identifying a specific plan) or though physical actions, mental status or recent serious suicide attempts." UMF 10.

11. PSU provided an MDC-42 standard referral form that PSU deemed appropriate to share one-on-one with MDC officers, which informed the officers that Plaintiff was on suicide watch Level I. UMF 11.

12. The MDC-42 form for Plaintiff stated that as a suicide watch level I detainee, Plaintiff was to be provided with a smock, and that if a smock was unavailable to allow him to use a blanket, but that he was not allowed ordinary clothing. UMF 12.

13. MDC Policy HCA 12.49 (Suicide Prevention Program) provides that upon being deemed on suicide watch Level I, all bedding, clothing and personal property should be removed from the detainee and the crisis cell, and the detainee should be given a suicide smock or gown to wear. UMF 13.

14. Plaintiff complied with Defendant Sergeant Griego's directive to remove his clothing in the crisis cell. UMF 14.

15. Sergeant Griego did not make physical contact with Plaintiff related to the removal of Plaintiff's clothing. UMF 15.

16. Plaintiff was housed with "infirmary" or PAC Unit from February 28 to March 5, 2014. UMF 16.

17. Plaintiff was housed for at least part of the time between February 28 and March 5 with another detainee in the same cell. UMF 17.

18. The decision that Plaintiff be housed with another detainee in the same cell would have been made by PSU staff. UMF 18.

19. Defendants had no input or authority regarding Plaintiff being housed in the same cell with another detainee. UMF 19.

20. The MDC-42 standard referral form for the other detainee housed with Plaintiff was appropriate to share one-on-one with MDC officers, and it informed officers that the other detainee was also on suicide watch Level I. UMF 20.

21. Defendant Sergeant Owen investigated the issue of Plaintiff missing the transport to Polk County. UMF 21.

22. On February 28, 2014, Sergeant Owen charged Plaintiff with malingering or faking an illness, lying or providing false information, and disruptive conduct. UMF 22.

23. Plaintiff received a disciplinary notice pending a disciplinary hearing in relation to Sergeant Owen's charge, but waived his right to a disciplinary hearing and was instead just "written up." UMF 23.

24. The other MDC detainee who was housed with Plaintiff in SHU had also claimed he was going to hurt or inflict injury upon himself to avoid transport to Polk County. UMF 24.

25. Sergeant Owen charged this other detainee with malingering or faking an illness, lying or providing false information, and disruptive conduct. UMF 25.

26. Plaintiff submitted two grievances related to these events. UMF 26.

27. In his first grievance, Plaintiff grieved as follows:

> On Feb. 28th 2014 I was placed on suicide watch in infirmary, me an[d] [other inmate] were placed in the same cell together naked, on March 2nd around 9 in the morning we were cleared to go to PAC 2 where we were placed in separate cells. [Other inmate] was in cell 10 I was placed in cell 3. We asked several C.O.s if we can shower an[d] was told that P.C.s do not get nothing in here that we can sit in the cell an[d] suffer. We stayed in those cells until March 5th 2014 without showers. We did not come out of our cells period. The doctor told me he don't know why we are still in the cell we were cleared an[d] should have been placed on a boat. There were

several other inmates from the P.C. unit in PAC 2 that were on boats.

UMF 27.

28. Plaintiff's first grievance was closed on March 17, 2014, with the explanation that "Dr. Eide cleared you from suicide watch, however she didn't clear you from PAC unit to return to GP [general population] or admin segregation." UMF 28.

29. At the time in question, Dr. Eide was employed by Correctional Healthcare Companies, Inc., the company that contracted with Bernalillo County to provide medical and mental health services to MDC detainees. UMF 29.

30. In his second grievance, dated March 18, 2014, Plaintiff grieved as follows:

> On 2.28.2014 I was told by Sargent [sic] Owens [sic] I was going to Seg 1. I was taken to infirmary where Sargent [sic] Greigo [sic] told us to strip naked we were going on suicide watch. Sargent [sic] Greigo [sic] said he was going to mase [sic] me and [other inmate] in the same cell naked togeather [sic]. On 3.12014 Sargent [sic] Owens [sic] came into infirmary saying look at the two P.C. punks in the cell naked together playing with each others penis. On 3.3.2014 Owens [sic] comes into PAC 2 say look at the two guys that were in the same cell playing with each other I felt sexually hara**ed [sic].

UMF 30.

31. Plaintiff's second grievance, as well as his allegations in the Amended Complaint, aver verbal sexual harassment by Defendants, without any allegations of physical contact. UMF 31.

32. Plaintiff's second grievance was being investigated in March 2014. UMF 32.

33. MDC Captain Nick Goodwin does not recall conducting an investigation himself regarding Plaintiff's second grievance and states that it is possible that another supervisor may have conducted an investigation, but he has no information or knowledge as to whether a written investigative report on Plaintiff's second grievance exists despite his diligent efforts to locate any such report. UMF 33.

34. MDC supervisors have been unable to find any investigative report related to Plaintiff's second grievance. UMF 34.

35. Records show that Defendant Sergeant Owen was not at work on March 3, 2014 because he had taken vacation leave, although that date is one of the dates on which Plaintiff alleges that Sergeant Owen verbally sexually harassed Plaintiff. UMF 35.

36. MDC's non-discrimination policy is "[t]o ensure that all inmates regardless of race, religion, national origin, sex, handicap or political beliefs have equal access to programs and work assignments in accordance with written policy and procedures." UMF 36.

37. Per policy, MDC detainees are protected from, inter alia, "harassment, sexual harassment, and sexual abuse." UMF 37.

38. Per policy, all detainees "shall have timely access to care to meet their serious health care needs, including medical, dental, and/or mental health needs." UMF 38.

39. Mental health services at MDC are "under the direction of the Designated Psychiatrist who is responsible for all clinical judgments regarding mental health care provided to inmates at the facility." UMF 39.

40. MDC policy also provides that "[a]ll clinical decisions and actions (e.g., medical, psychiatric, dental or substance abuse) regarding health care provided to inmates to meet their serious medical needs shall be the sole responsibility of qualified health care professionals, who shall make clinical decisions and take clinical actions consistent with BCMDC security procedures." UMF 40.

41. Per MDC policy, once an MDC detainee is housed in the SHU, "[o]nly a physician may release an inmate from sheltered housing." UMF 41.

42. PSU staff decide if and when Level I suicide watch detainees get to shower, exercise, get recreation, and make phone calls; MDC security has no input or authority on those decisions. UMF 42.

43. Defendants (as individual MDC officers and Bernalillo County employees) would have no input or authority to make decisions regarding Plaintiff's health and well-being as it would relate to showering, recreation, exercise and making phone calls once Plaintiff was placed on suicide watch Level I by PSU staff. UMF 43.

44. Plaintiff received medical and mental health care during his stay in PSU. UMF 44.

45. Defendants would have no input or authority related to Plaintiff's medical care during the time he was a suicide watch Level I detainee housed at SHU. UMF 45.

46. Defendants had no personal involvement with Plaintiff on the issues raised in Count II of his Amended Complaint. UMF 46.

47. At no time during Plaintiff's detention at MDC did Defendants have any knowledge or information of any risk, excessive or otherwise, to Plaintiff's health and safety. UMF 47.

48. MDC personnel besides Defendants who had direct or indirect dealings with Plaintiff on the issues raised in the pleadings did not have knowledge or information of any risk, excessive or otherwise, to Plaintiff's health and safety. UMF 48.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Ordinarily, the movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to

designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

However, summary judgment motions based upon the defense of qualified immunity are reviewed differently from other summary judgment motions. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id*. (*citing Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). This is a "strict two-part test" that must be met before the defendant asserting qualified immunity again "bear[s] the traditional burden of the movant for summary judgment— showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

Determining whether the allegedly violated right was "clearly established" depends on whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be

as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). While the plaintiff need not locate "a case directly on point," nevertheless "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In fact, the Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" in order to avoid unduly inhibiting officers in performing their official duties. *Wilson v. City of Lafayette*, 510 F. App'x 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).

Whether the motion for summary judgment is based on qualified immunity or not, the Court decides the motion on the basis of the facts as construed in the light most favorable to the non-moving party. Consequently, it must keep in mind three principles. First, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve all reasonable inferences and doubts

12

in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (noting that courts generally "accept the facts as the plaintiff alleges them" when considering whether a plaintiff has overcome defendant's assertion of qualified immunity at the summary judgment stage). However, "a plaintiff's version of the facts must find support in the record" at the summary judgment stage. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

### IV. PLAINTIFF HAS FAILED TO DEMONSTRATE DEFENDANTS VIOLATED HIS CONSTITUTIONAL RIGHTS THROUGH SEXUAL HARASSMENT

Pretrial detainees, such as Plaintiff, have essentially the same rights under the due process clause of the Fourteenth Amendment as convicted prisoners have under the Eighth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Therefore, an Eighth Amendment analysis is proper for evaluating Plaintiff's federal claims against Defendants. *See McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996) ("Eighth Amendment standards applicable to convicted persons provide the benchmark [for such claims by pretrial detainees]."). The Court's Eighth Amendment analysis is guided by "contemporary standards of decency," which establish the "minimal standards of providing humane conditions of confinement."

*Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)) (internal quotation marks omitted). The "unnecessary and wanton infliction of pain" on a prisoner constitutes cruel and unusual punishment in violation of these minimal standards. *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation and internal quotation marks omitted). An official violates the Eighth Amendment when the alleged "punishment" is "objectively 'sufficiently serious,'" *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and the official has "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)).

Applying these standards to the allegations in Plaintiff's Amended Complaint, the Court found that Plaintiff stated a plausible claim in Claim I. *See doc. 23* at 6-11. This conclusion was based on Plaintiff's allegations that Defendants (i) stripped him naked, (ii) placed him in a cell in that condition for over a week, (iii) placed another inmate in the cell for a portion of that time, and (iv) mocked him with graphic sexual innuendos. *See id.* at 8-10. The Court concluded that, because the alleged conduct was sufficiently serious and did not appear to have any legitimate penological purpose,

14

Plaintiff's claim should proceed past the 12(b)(6) stage. *Id*. However, the undisputed material facts listed above do not support Plaintiff's allegations.

The genesis of the circumstances of which Plaintiff complains was his claim that he was going to hurt himself. UMF 4. Pursuant to policy, this claim led to his categorization as a Level I suicide watch detainee. UMF 5-7. Consequently, Plaintiff was moved him to the Sheltered Housing Unit (SHU) to be treated by the Psychological Services Unit (PSU) run by the Correctional Healthcare Companies (CHC). UMF 5-8. While an inmate is housed in the SHU cell on suicide watch, MDC policy does not permit the inmate to have bedding, ordinary clothing or personal property. UMF 12-14. Consequently, Defendant Griego directed Plaintiff to remove his clothing before he was left in the cell. UMF 14-15. There was no physical contact between Defendant Griego during this process.[3] UMF 15.

After being placed in the cell, MDC policy also required that PSU provide Plaintiff with a smock or blanket. UMF 12. There is no evidence that Plaintiff was not provided with either a smock or blanket. In any event, after he was placed in the cell, his care was the responsibility of PSU personnel, not Defendants. UMF 41-45. Moreover, the length of time that Plaintiff remained in the cell on suicide watch and whether any other inmate shared the cell with him were decisions made by PSU staff

---

[3] There was no physical contact with Defendant Owen either, as he was not involved in directing Plaintiff to disrobe.

15

and not Defendants, and Defendants did not have any knowledge regarding any risk to Plaintiff's health or safety during his detainment. UMF 41-48.

Thus, with respect to these potentially aggravating circumstances upon which the Court earlier relied in denying Defendants' Motion to Dismiss Claim I of Plaintiff's Amended Complaint, they do not establish a constitutional violation in light of the undisputed material facts now in the record. While Defendant was required to remove his clothing, this directive had a legitimate penological purpose – to protect him from harming himself. To the extent that he was not expeditiously provided a suicide smock or blanket, that failure was not the responsibility of either named Defendant. Similarly, the other circumstances of which Plaintiff complains were also not the responsibility of Defendants.

In short, the only alleged misconduct which can be placed at the feet of Defendants is the verbal harassment. Even accepting Plaintiff's version of facts as expressed in his grievances, this misconduct amounted to two isolated remarks. Such verbal harassment is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (holding that the court "cannot infuse defendant's words of sexual harassment with the sort of violent or threats of violence cognizable in the conditions of confinement cases the [Supreme] Court has addressed"); *Pulsipher*, 143 F.3d at 1310 n.11 ("Although plaintiffs allege that Mr. Pulsipher subjected them to severe verbal sexual harassment and intimidation,

these acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment."); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal harassment "is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983"); *see also Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1155 (10th Cir. 2005) (disparaging remarks by police officer about an inmate in front of prison personnel "clearly do not give rise to a constitutional violation."). As Plaintiff has failed to establish a constitutional violation in Claim 1, that claim is subject to summary judgment in favor of Defendants.

V. **PLAINTIFF HAS FAILED TO DEMONSTRATE DEFENDANTS VIOLATED HIS CONSTITUTIONAL RIGHTS THROUGH DEPRIVATION OF LIFE'S ESSENTIALS**

To establish § 1983 liability against a government official sued in his individual capacity, Plaintiff must establish that the "defendant, through the official's own actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Consequently, Plaintiff "must show that an affirmative link exists between the [constitutional] deprivation and either the [defendant's] personal participation, his exercise of control or direction, or his failure to supervise." *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000)). Here, it is undisputed that Defendants had no personal involvement in the deprivations Plaintiff alleges in Claim 2. UMF 42-48. Instead, these deprivations, if true, were imposed by members of the PSU staff.

There is also no evidence that Defendants had supervisory authority over PSU personnel and failed to exercise it in such a way that could lead to liability. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) ("A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."). Because Plaintiff has failed to show sufficient personal participation by Defendants in the deprivations alleged in Claim 2, he has failed to show Defendants committed the constitutional violation set forth in Claim 2. Thus, this claim is subject to summary judgment in favor of Defendants.

## VI. CONCLUSION

Plaintiff has waived the right to respond or to controvert the facts asserted in the summary judgment motion. Under those facts, he has failed to establish Defendants committed a constitutional violation as alleged in either Claim 1 or Claim 2 of his Amended Complaint. Therefore, he has failed to overcome the qualified immunity defense asserted by Defendants in their Motion for Summary Judgment. Thus, I recommend granting Defendants' Motion for Summary Judgment (*doc. 33*), and dismissing Plaintiff's Amended Complaint with prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**